**Eugene S. CONN**

v.

**UNITED STATES STEEL and Carnegie Pension Fund.**

**Civ. A. No. 86–3794.**

United States District Court,
E.D. Pennsylvania.

May 6, 1987.

Roger J. Harrington, Philadelphia, Pa., for plaintiff.

James T. Carney, Pittsburgh, Pa., for defendants.

**MEMORANDUM AND ORDER**

SHAPIRO, District Judge.

Defendant has moved for summary judgment in this action to vacate or modify an arbitration award. Because there is no genuine issue of material fact and the award draws its essence from the plan documents so that the arbitration award is final and binding with respect to plaintiff's claims, defendant is entitled to judgment as a matter of law and its motion will be granted.

Plaintiff Eugene S. Conn was employed by United States Steel Corporation at its Philadelphia sales office from April 20, 1963, until December 1983, when the Philadelphia sales office was permanently closed, the inside sales function was transferred to Pittsburgh, and Conn's employment was terminated. When his employment was terminated, Conn held a management position as an inside sales representative; he was forty-seven years old and had completed twenty years and eight months of continuous service. On December 9, 1983, Conn signed the "Election and Acknowledgment of Employee Concerning Severance and Layoff" form, indicating that he elected severance instead of layoff; he received a severance payment of $120,-750.00. Conn subsequently applied for a special early retirement benefit, a "Rule-of–65 Pension" under the provisions of the United States Steel Corporation Plan for Employee Benefits (Revision of 1950) ("the Plan"), after his immediate supervisor, Peter Hansen, suggested that he might be eligible. The parties disagree about what Conn was then told concerning the possibility of an offer of suitable long-term employment.

Defendant United States Steel and Carnegie Pension Fund is the named fiduciary under the Plan and is charged with the fiduciary responsibilities of Plan participants. The United States Steel 1980 Non-Contributory Pension Rules (Exhibit A)[1]

---

**1.** The exhibits referred to are those attached to Mr. Conn's original petition to vacate the arbitration award. They are verified by the affida-

vit accompanying defendant's motion for summary judgment of James D. Short, Vice-Presi-

and the Summary Plan Description of the United States Steel 1980 Non-Contributory Pension Rules (Exhibit B) state the criteria for eligibility for a Rule-of–65 pension. The relevant provisions of the Summary Plan Description and Pension Rules are attached hereto as Appendix A. The Plan administrator denied Conn's application for a Rule-of–65 pension; Conn appealed to the vice-president for administration of the Fund for further review. After an unfavorable decision by the vice-president, Conn requested arbitration before a mutually agreeable arbitrator.

The Plan provides for such arbitration and states, "The arbitrator shall have authority only to decide the question pursuant to the provisions of the pension plan but shall not have the authority in any way to alter, add to or subtract from any of such provisions. The decision of the arbitrator shall be binding on the Employing Company, the Pension Fund and the Claimant." (Exhibit J, p. 6.)

On October 1, 1985, the parties proceeded to arbitration conducted by Professor Walter J. Gershenfeld under the auspices of the American Arbitration Association. On February 28, 1986, Professor Gershenfeld made the following award: "Mr. Eugene S. Conn is not eligible for a Rule of 65 pension." (Exhibit H) Accompanying the award was an opinion in which Professor Gershenfeld made findings of fact and interpreted the terms of the Plan in support of his award.

After identifying the relevant Plan provisions and rules, the arbitrator articulated the reasons for his award. Professor Gershenfeld found, *inter alia*, that because Conn met the age and service requirements for a Rule-of–65 pension he would have been eligible for this special early retirement benefit only if his continuous service was broken by layoff and he was not offered suitable long-term employment within two years or told that he would not be offered suitable long-term employment. When the Philadelphia sales office, which the arbitrator found was not a plant, was closed, Conn was not immediately terminat-

ed. Rather, he was presented with an election between severance, which would terminate his employment status, or layoff, which would preserve his employment status and thereby his eligibility for a Rule-of–65 pension. Conn's election of severance was a free one; he was not tricked. Although Conn was never offered suitable long-term employment, he was also never told that he would not be offered suitable long-term employment.

The arbitrator also found that there was nothing unclear or unreasonable about the requirement that an employee remain on layoff status for two years to be eligible for a Rule-of–65 pension. Nor was there any ambiguity in the requirements. (Exhibit H)

Plaintiff filed a petition to vacate or modify the award of the arbitrator on May 29, 1986; on June 29, 1986, defendant filed a verified petition for removal to this court. Following the court's denial of defendant's motion to dismiss, plaintiff filed a complaint alleging that the arbitration award does not draw its essence from the Plan, violates public policy, and condones fraudulent behavior. In addition, plaintiff contends that, as a management employee he is not bound by the arbitration award. Plaintiff does not allege any violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001 *et seq.* (West 1985). Defendant answered and subsequently moved for summary judgment.

■ The court has subject matter jurisdiction under 29 U.S.C.A. § 1132(e) (West 1985), *see United States Steel and Carnegie Pension Fund v. McSkimming*, 759 F.2d 269 (3d Cir.1985), but "[t]he standard of review applied by federal courts to labor arbitration awards is exceedingly narrow." *Id.* at 270. An arbitrator's award must be upheld,

> if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a

dent for Administration of the United States Steel and Carnegie Pension Fund.

manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Id.* at 270–71 (quoting *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969); *cf. Roberts & Schaefer Co. v. Local 1846, United Mine Workers of America,* 812 F.2d 883, 885 (3d Cir.1987). A federal court may vacate or refuse to enforce an arbitration award that orders illegal conduct or is against an explicit public policy, *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); that enforces an illegal contract provision, *Telephone Workers Union Local 827 v. New Jersey Bell Telephone Co.,* 584 F.2d 31 (3d Cir. 1978); that does not draw its essence from the agreement that provided for arbitration, *W.R. Grace & Co.,* 461 U.S. at 766, 103 S.Ct. at 2183; or that is the product of fraud or prejudice, *see* Comment, *The Employers Dilemma,* 34 Syracuse L.Rev. 1067, 1068, 1087–89 (1983).

█ Under this exceedingly narrow standard of judicial review, there is no ground for vacating the arbitrator's award. Summary judgment is proper because there is no genuine issue of material fact. Fed.R. Civ.P. 56(c). The arbitrator's award draws its essence from the Plan. It is neither explicitly nor implicitly based on the arbitrator's view of the requirements of ERISA. Rather, the arbitrator made reasonable findings of fact based on the evidence before him and applied traditional principles of contract interpretation in construing the Plan and the rules. None of the arbitrator's findings is irrational.

Plaintiff argues that the arbitrator erred in considering the employer's intent but ignoring Conn's intent at the time that the pension plan was drafted. Because Conn had no role in drafting the Plan or the rules, this contention is frivolous. It was proper for the arbitrator to consider what he perceived to be the employer's intent when the Plan was drafted. *See Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1130 n. 31 (3d Cir.1969).

The arbitration award does not violate any explicit public policy. A court may vacate an arbitration award only if it violates a "well defined and dominant" public policy that is "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace & Co.,* 461 U.S. at 766, 103 S.Ct. 2183 (quoting *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)). Plaintiff does not allege that the denial of the Rule-of–65 pension, a special early retirement benefit, constitutes a violation of ERISA or of any other statute or legal precedent. It is undisputed that Conn will receive his vested pension benefits at age sixty-two. There is no clear mandate of public policy that requires an employer to give an immediate special early pension to any employee displaced after twenty years.

The arbitrator found, based on the evidence before him, that Conn had not been tricked into electing severance and that he was not told that he would not be offered suitable long-term employment. There was evidence in the record before the arbitrator to support these findings; these findings were neither irrational nor arbitrary and capricious. Therefore, the award does not condone fraudulent conduct as plaintiff contends.

Conn contends that he is not bound by the arbitration award because he was a management employee rather than a member of the union that negotiated the contract. But Conn may not claim benefits under the Plan while asserting that he is not bound by other provisions of the Plan. *See Barrowclough v. Kidder, Peabody & Co., Inc.,* 752 F.2d 923, 938–39 (3d Cir.1985) (non-signatories of arbitration agreements bound by them under ordinary common law contract and agency principles).

Because the arbitrator's award is proper and because the arbitration clause of the Plan was binding on Conn, the court may not vacate the award. Summary judgment will be granted in favor of defendant.

APPENDIX A

*Summary Plan Description*

*Rule-of-65* (page 7)

Before age 55—at least 20 years of continuous service as of last day worked with age plus continuous service equaling at least 65 but less than 80—special circumstances such as permanent shutdown or prolonged layoff or disability and not offered suitable long-term employment with the Company.

*Rule-of-65 Retirement* (page 19)

Under certain circumstances, a participant who has at least 20 years of continuous service as of his last day worked may retire on or after the first day of the sixth month following the applicable effective date before he has reached age 55, and receive a Special Payment and a Regular Pension if:

his continuous service was broken because of a layoff or disability, and

the total of his age and continuous service equals at least 65 but less than 80, and

he has not been offered suitable long-term employment with the Company ...

A job offered by the Company will normally be considered "suitable long-term employment" if:

the employee is physically able to perform the job; and

the employee has or can acquire through training the ability and skills to perform the job; and

it is not a temporary job; and ...

in the case of a management employee, the job offered is a management position, except that a nonmanagement position may be offered where permitted by local practices or contractual provisions or if the job offered is comparable to the job the employee held prior to his employment on the position held as of the last day of work; and

the overall benefits package for the job offered is generally equivalent to the overall benefits package at the employee's previous employment location.

An employee otherwise eligible for rule-of–65 retirement who refuses an offer of suitable long-term employment by the Company will be ineligible for rule-of–65 retirement.

*Rules*

*Rule-of-65 Retirement*

2.7(a) Any participant subject to paragraphs (b) and (c) below,

(1) who shall have had at least 20 years of continuous service as of his last day worked, and

(2) who has not attained the age of 55 years, and whose combined age and years of continuous service shall equal 65 or more but less than 80, and

(3) who has not been offered suitable long-term employment with an Employing Company as defined in Appendix B, and

(4) whose continuous service is broken by a layoff or physical disability, or

(5)(i) whose continuous service is not broken and who is absent from work by reason of a layoff resulting from his election under a labor agreement applicable to him to be placed on layoff status pursuant to the provisions of such agreement applicable in the event of a permanent shutdown, or

(ii) whose continuous service is not broken and who is absent from work by reason of a physical disability or a layoff other than a layoff resulting from an election referred to above and whose return to active employment is declared unlikely by his Employing Company, or

(iii) who considers that it would be in his interest to retire and his Employing Company considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions,

shall be eligible to retire on or after the effective date of coverage under these Pension Rules, and shall upon his retirement (hereinafter "rule-of–65 retirement") be eligible for a pension; provided, however, that the participant will not be eligible to retire until the earliest of (i) the second anniversary of the participant's last day worked, or (ii) the end of the month in which the Employing Company advises the participant that he will

not be offered suitable long-term employment ...

\* \* \* \* \* \*

(c) The provisions of subparagraph 2.7(a)(5) shall be applicable only if provided for pursuant to a collective bargaining agreement.

\* \* \* \* \* \*

5.1(c) Continuous service shall be broken by quit, discharge, refusal (failure to accept an offer of employment within 15 days of the date the offer is made is tantamount to refusal) of a reasonable offer of employment in the case of an Employee not covered by the maximum hours provision of the Fair Labor Standards Act, or refusal (failure to accept an offer of employment within 15 days of the date the offer is made is tantamount to refusal) of suitable long-term employment if the rate of pay for the job offered is at least 90 percent of the Employee's base rate of pay prior to the last day worked at his previous employment location in the case of an Employee not covered by a collective bargaining agreement unless the Employee is covered by the maximum hours provision of the Fair Labor Standards Act and qualifies or could qualify for a 70/80 retirement within two years of the last day worked, termination due to permanent shutdown of a plant, department or subdivision thereof, payment of severance or similar allowance, except (i) payment of any such allowance made pursuant to law by reason of transfer of employment from one location of an Employing Company to another location of an Employing Company, and (ii) payment of any such allowance made pursuant to law shall not break continuous service for the purpose of determining eligibility for pension until two years following the date last worked unless the participant retires prior to such date, absence due to a compensable disability occurring during course of employment which continues beyond the later of (i) two years from commencement of such absence or (ii) 30 days after final payment of statutory compensation for such disability (or 30 days after the end of the period used in calculating a lump-sum payment), absence due to leave of absence which continues beyond the period of leave granted by the Employing Company, or absence, excluding periods of active employment of 30 days or less resulting from the participant's having been granted a transfer under the Inter-Plant Job Opportunities Program provisions of a labor agreement applicable to him (other than absence due to a compensable disability or leave of absence), which continues for more than two years; provided that the continuous service of an Employee shall be broken by an occurrence prior to the effective date of his coverage under these Pension Rules which under pension practices then in effect caused a break.